UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

ESTATE OF PAUL WADE ADAMS, SR. by )
and through PERSONAL REPRESENTATIVE )
JESSICA NICOLE FAIRFAX, AND ESTATE )
OF CATHY JOHNSON ADAMS by and )
through PERSONAL REPRESENTATIVE ) 7:14-cv-292
JESSICA NICOLE FAIRFAX )
                Plaintiffs )
                 ) COMPLAINT
      v. )
                 )
UNITED STATES OF AMERICA )
              Defendant )

NOW COME the Estate of Paul Wade Adams, Sr. and the Estate of Cathy Johnson Adams, by and through their Personal Representative, Jessica Nicole Fairfax, and counsel, complaining of the United States of America and allege and say as follows:

## JURISDICTION

1. This action is filed pursuant to the Federal Tort Claims Act (FTCA), and this Court has jurisdiction pursuant to 28 USC §§ 1346(b) and 2671-2680.

## CLAIM FOR RELIEF

2. Paul and Cathy Adams had been married 38 years at the time they died on July 18, 2012.

3. Cathy and Paul Adams lived together in Lumberton, Robeson County, North Carolina, at all times pertinent to this action.

4. Paul Adams shot and killed his wife, Cathy, in their home on July 18, 2012.

5. Then, Paul Adams shot and killed himself at home on July 18, 2012.

6. Jessica Nicole Fairfax is the daughter of Cathy and Paul Adams.

7. Jennifer Nicole Fairfax was appointed the Personal Representative of the Estate of Paul Wade Adams, Sr. by the Robeson County Clerk of Superior Court on September 26, 2012; a copy of the Letters of Administration is attached hereto as Exhibit A.

8. Jennifer Nicole Fairfax was appointed the Personal Representative of the Estate of Cathy Johnson Adams by the Robeson County Clerk of Superior Court on September 26, 2012; a copy of the Letters of Administration is attached hereto as Exhibit B.

9. Paul Adams was a Veteran who had served in the United States Army.

10. At all times pertinent to this action, Paul Adams was entitled to receive medical care from the VA.

11. On June 15, 2012, Paul Adams had an appointment with a primary care provider at the VA.

12. The VA records indicate that the primary care provider referred Paul Adams for a VA mental health consult because Mr. Adams was having suicidal ideation and thoughts and had access to firearms.

13. Paul Adams' suicidal ideation (SI) indicated he expressed thoughts and/or plans to kill himself.

14. On June 15, 2012, the VA records indicated a plan to start Mr. Adams on an anti-depressant.

15. As a result, Mr. Adams was given a prescription and started on Zoloft, an anti-depressant.

16. On the afternoon of Friday, July 6, 2012, Nicole Fairfax took her father to the emergency room at the VA hospital in Fayetteville, Cumberland County, North Carolina.

17. The VA Nursing Triage Note written in the ER at 4:49:05 p.m. on July 6, 2012 stated:

> "Primary reason for visit:
> Patient presents to ED with c/o suicidal attempt 2 days ago, patient tried to shoot himself with a gun outside of his home. Patient still has the gun at home. Patient admits suicidal thoughts X 2 months."

A copy of the note is attached hereto as Exhibit C.

18. Paul Adams was evaluated in the ER and then admitted directly into the psychiatric unit, 4C, of the VA hospital in Fayetteville.

19. The VA records indicate Paul Adams had suicidal ideation and homicidal ideation.

20. Paul Adams homicidal ideation (HI) indicated he expressed thoughts and/or plans to kill other people.

21. Paul Adams was kept as an inpatient at the VA hospital in Fayetteville from the evening of July 6, 2012 until the VA discharged him on the morning of July 10, 2012.

22. The VA records made while Paul Adams was an inpatient document that he told the VA staff he tried to shoot himself with a gun on July 4, 2012, but the gun slipped.

23. When Paul Adams presented to the VA hospital on July 6, 2012, he still had a flashburn on his face from the failed suicide attempt of July 4.

24. The VA records made while Paul Adams was an inpatient in the psychiatric unit document that he had suicidal ideation (SI) and homicidal ideation (HI).

25. When Paul Adams was an inpatient at the VA hospital between July 6 and July 10, 2012, he was kept in a locked psychiatric ward and kept on suicide watch.

26. When Paul Adams was an inpatient between July 6 and July 10, 2012, he did not have access to guns.

27. While Paul Adams was an inpatient between July 6 and July 10, 2012, the VA did not meet with, or otherwise contact, his family to take a history about his behavior or access to firearms.

28. While Paul Adams was an inpatient between July 6 and July 10, 2012, the VA did not meet with, or otherwise take steps, to warn his family and make sure that Mr. Adams would not have access to guns if and when he was released.

29. The VA records indicate that while he was an inpatient in the psychiatric unit, Mr. Adams told a psychiatrist he had not consistently taken the Zoloft prior to coming to the hospital.

30. While Paul Adams was an inpatient at the VA between July 6 and July 10, 2012, the VA discontinued the anti-depressant Zoloft and started him on a new anti-depressant, Wellbutrin.

31. On July 7, 2012, the VA started Paul Adams on a dose of 150 mg of Wellbutrin per day.

32. The VA records state Mr. Adams was to take 1 Wellbutrin pill each day for the first week; then to double the dosage and take 2 Wellbutrin pills each day; and that it would take 3 to 4 weeks before the anti-depressant reached maximum benefit.

33. The VA did not keep Paul Adams in the hospital long enough for him to reach the target dosage of 2 pills per day.

34. The VA did not keep Paul Adams in the hospital long enough to test or observe him to determine the Wellbutrin had reach a therapeutic level for the anti-depressant benefits to work.

35. The VA discharged Paul Adams from the VA hospital in Fayetteville on the morning of Tuesday, July 10, 2012.

36. The VA discharged Paul Adams when he was at high risk to commit or attempt suicide.

37. The VA discharged Paul Adams when he was at high risk to commit or attempt homicide.

38. The VA initiated Paul Adams' discharge from the hospital.

39. Paul Adams did not initiate his discharge from the VA hospital.

40. Paul Adams' family did not initiate his discharge from the VA hospital.

41. At the time he was discharged on July 10, 2012, the VA doctors knew, or should have known, Paul Adams did not have a therapeutic level of the Wellbutrin in his body.

42. Prior to discharging Paul Adams on July 10, 2012, the VA did not meet with Mr. Adams' family to discuss his medication or the risk he posed to kill himself and others.

43. Prior to discharging Paul Adams on July 10, 2012, the VA did not meet with, or otherwise contact, his family to make sure Mr. Adams would not have access to guns.

44. On the morning of Tuesday, July 10, 2012, the VA discharged Paul Adams and left him alone in front of the hospital.

45. After the VA discharged Paul Adams, he was waiting by himself outside the hospital when his wife arrived to pick him up.

46. If the VA had taken a history from Paul Adams' family prior to discharging him, the VA would have learned Mr. Adams had made another suicide attempt with a gun before the attempt he made to shoot himself on July 4, 2012.

47. If the VA had taken a history from Paul Adams' family prior to discharging him, the VA would have learned that Mr. Adams had written a suicide note to his wife before July 6, 2012.

48. If the VA had taken a history from Paul Adams' family prior to discharging him, the VA would have learned that Mr. Adams had sole control of his guns stored in his gun safe in a building behind his home.

49. If the VA had taken a history from Paul Adams' family prior to discharging him, the VA would have learned that Mr. Adams had withdrawn all the cash from his bank accounts and given it to his wife shortly before July 6, 2012.

50. After Paul Adams withdrew all the money from the his bank and gave it to his wife, Cathy, she put the money back into the bank.

51. Prior to July 18, 2012, the VA did not warn Paul Adams' family to secure his guns.

52. Prior to July 18, 2012, the VA did not warn Paul Adams' family that he was homicidal.

53. In May 2014, plaintiff filed a claim with the VA (on a Form 95) for the wrongful death of Paul Adams.

54. In May 2014, plaintiff filed a claim with the VA (on a Form 95) for the wrongful death of Cathy Adams.

55. On November 20, 2014, the Department of Veterans Affairs sent a letter denying the claims for the deaths of Paul Adams and Cathy Adams.

56. The November 20, 2014 letter from the VA stated that plaintiff could file this action.

57. Prior to filing this action, the medical care and all medical records available to the plaintiff after reasonable inquiry pertaining to Paul Adams' treatment from the VA have been reviewed by a person who is reasonably expected to qualify as an expert witness under

Rule 702 of the Rules of Evidence and who is willing to testify that the medical care provided to Paul Adams by the VA did not comply with the applicable standard of care at the time Paul Adams was treated by the VA.

58. While he was an inpatient at the VA hospital in Fayetteville between July 6 and July 10, 2012, Paul Adams was under the care of VA health care providers including: medical doctors (psychiatrists - Heggadadev Nataraja and Jean Enrique Vil); physician assistants; registered nurses; social workers; and addiction therapists.

59. During the time that he was an inpatient at the VA hospital between July 6 and July 10, 2012, and up until he committed homicide and suicide on July 18, 2012, all the VA healthcare providers who cared for Paul Adams were acting in the course and scope of their office or employment with the VA.

60. At times pertinent to this action, including between July 6, 2012 and July 18, 2012, the care of the VA's healthcare providers given to Paul Adams was not in accordance with the standard of practice among members of the same healthcare profession situated in the same or similar communities under the same or similar circumstances by one or more of the following acts or omissions:

   a. They failed to keep Paul Adams as an inpatient for a safe period of time;

   b. They failed to adequately assess and diagnose Paul Adams' illness and/or delusions;

   c. They relied solely on the history and information given by Mr. Adams;

   d. They relied solely on history and information from Mr. Adams when there were indications he was either delusional or not truthful;

   e. They failed to take an adequate history from Paul Adams' family;

   f. They failed to monitor Mr. Adams' drug level and assess him until he achieved a therapeutic anti-depressant level of Wellbutrin before discharging him;

g. They relied solely on Paul Adams to comply with taking Wellbutrin when their records showed he had stopped taking Zoloft and had attempted suicide while he was supposed to be controlling depression with Zoloft;

h. They failed to follow up on and properly assess the homicidal ideation Mr. Adams expressed;

i. They failed to warn Paul Adams family and/or take reasonable steps to have Paul Adams' access to guns removed;

j. They failed to warn the family and others that Paul Adams posed a danger to commit a dangerous act;

k. They determined Mr. Adams was abusing alcohol and substance dependant and failed to exercise reasonable care to treat those conditions;

l. They prescribed and continued Wellbutrin inappropriately because using Wellbutrin with alcohol has a documented risk of an increase in depression and suicide and they determined Paul Adams was abusing alcohol, and alcohol dependent;

m. Most of Mr. Adams' inpatient stay was over the weekend so they did not provide him reasonable, thorough and complete evaluation and treatment when the mental health unit was fully staffed;

n. They initiated a discharge which was neither safe nor appropriate;

o. They did not adequately confer and coordinate Mr. Adams' care;

p. They did not reasonably follow up and consult all the providers with the VA who assessed Mr. Adams;

q. They acted recklessly in disregard for the rights and safety of Paul Adams and others, including Cathy Adams;

r. They were otherwise negligent, grossly negligent, or reckless as will be shown through discovery and proven at the trial of this action.

61. Some or all of the acts and omissions of the VA's healthcare providers, more particularly described in paragraph 60 above, constitute negligence.

62. Some or all of the acts and omissions of the VA's healthcare providers, more particularly described in paragraph 60 above, constitute gross negligence.

63. Some or all of the acts and omissions of the VA's healthcare providers, more particularly described in paragraph 60 above, demonstrated reckless disregard for the rights and safety of others, including Paul Adams and Cathy Adams.

64. At all times pertinent to this action, including between July 6 and July 18, 2012, it was reasonably foreseeable that Paul Adams was inclined to use a gun to commit suicide and/or homicide.

65. As a direct and proximate result of the negligent, grossly negligent, and reckless acts and omissions of the healthcare providers at the VA, Paul Adams committed suicide.

66. As a direct and proximate result of the negligent, grossly negligent, and reckless acts and omissions of the healthcare providers at the VA, Paul Adams killed Cathy Adams.

67. At the time of his death, Paul Adams had a completed age of 61 years.

68. At the time of his death, Paul Adams had a life expectancy, according to N.C. Gen. Stat. §8-46, of 20.4 years.

69. At the time of her death, Cathy Adams had a completed age of 56 years.

70. At the time of her death Cathy Adams had a life expectancy, according to N.C. Gen. Stat. §8-46, of 24.3 years.

71. Any statutory restriction on the amount of damages available, including N.C. Gen. Stat §90-21.19, is unconstitutional and does not afford due process or equal protection.

72. Any statutory restriction on the amount of damages available, including N.C. Gen. Stat. §90-21.19, does not apply because some or all of the acts and omissions of the VA demonstrated reckless disregard of the rights or safety of Paul and Cathy Adams.

73. Any statutory restriction on the amount of damages available, including N.C. Gen. Stat. §90-21.19, does not apply because some or all of the acts and omissions of the VA were grossly negligent.

74. As a direct and proximate result of the negligent, grossly negligent and reckless acts and omissions of the VA, the Estate of Paul Adams is entitled to recover compensatory damages for the injuries, damages, and death of Paul Adams in the amount of TWENTY MILLION DOLLARS ($20,000,000).

75. As a direct and proximate result of the negligent, grossly negligent and reckless acts and omissions of the VA, the Estate of Cathy Adams is entitled to recover compensatory damages for the injuries, damages, and death of Cathy Adams in the amount of TWENTY MILLION DOLLARS ($20,000,000).

## DEMAND FOR JUDGMENT

WHEREFORE, having stated claims against the United States of America, plaintiffs pray the court as follows:

1. That the Estate of Paul Wade Adams, Sr. have and recover compensatory damages from the United States of America in the amount of TWENTY MILLION DOLLARS ($20,000,000).

2. That the Estate of Cathy Johnson Adams have and recover compensatory damages from the United States of America in the amount of TWENTY MILLION DOLLARS ($20,000,000).

3. For the costs of this action as allowed by law.

4. For such other and further relief as the court may deem just and proper.

This the 18 day of December, 2014.

        SANFORD THOMPSON, PLLC
By:   /S/ Sanford Thompson
       Sanford W. Thompson, IV
       Attorney for Plaintiffs
       NCSB# 9496
       4800 Six Forks Rd., Ste. 100
       Raleigh, NC 27609
       (919) 784-9007
       Fax (919) 784-9003
       sanford@sthompsonlaw.com

        TART LAW GROUP, P.A.
By:   /S/ Joseph Tart
       Joseph L. Tart
       Attorney for Plaintiffs
       NCSB#10548
       700 W. Broad St.
       Dunn, NC 28334
       (910) 892-5388
       Fax (910) 892-1337
       joe@joetart.com

        TODD C. CONORMON, P.A.
By:   /S/ Todd Conormon
       Todd Conormon
       Attorney for Plaintiffs
       NCSB#
       120 Westlake Road, Unit #6
       Fayetteville, NC 28314
       (910) 826-8855
       Fax (910) 826-2234
       todd@militaryjusticecenter.com